19519

A. Elliott LAWSON and Norma Caldwell Lawson, Respondents, v. CITIZENS & SOUTHERN NATIONAL BANK OF SOUTH CAROLINA, as Trustee under the Will of R. B. Cleveland, Appellant.

(193 S. E. (2d) 124)

*Roy McBee Smith, Esq.,* of *Kerr & Smith,* Spartanburg, *for Appellant,*

*Messrs. Johnson & Smith,* of Spartanburg, *for Respond-ents,*

November 20, 1972.

Moss, Chief Justice:

In March, 1964, A. Elliott Lawson purchased two adjoining lots in a residential subdivision known as "Vanderbilt Hills" from Citizens & Southern National Bank of South Carolina, the appellant herein, as trustee under the will of R. B. Cleveland, deceased. Thereafter, he and his wife built a residence on said lots which they occupied for a time as a home. The husband and wife were divorced and the property was conveyed to her in partial discharge of the husband's obligation to support her and the minor children of the marriage. About two years after the construction of the house, it began to settle and an attempt was made to have the same repaired. In 1969, the house again began to settle and in attempting to repair it it was discovered by A. Elliott Lawson and Norma Caldwell Lawson, the respondents herein, that the dwelling had been built over a gulley and spring and that said gulley had been filled with

stumps and debris to a depth of some twenty to twenty-five feet and had been capped with clay. The respondents instituted an action to recover actual and punitive damages against the appellant herein, it being the developer of the subdivision.

The appellant demurred to the complaint and challenged the pleading for insufficiency of fact to state a cause of action and for improper joinder of several causes of action. The lower court sustained the demurrer and the present respondents appealed to this Court. We reversed and remanded, holding that where the developer, in subdividing land to be sold for residential use only, filled gulley with stumps and other rubble and concealed such fill by covering it with clay, that large part of lot sold to purchaser was comprised of filled area, which developer knew was unsuitable and unstable for intended purpose, and that developer failed to disclose the truth knowing purchaser was ignorant of the condition which was not apparent from inspection and knowing its materiality stated a cause of action for fraud and deceit. *Lawson v. Citizens and Southern National Bank of South Carolina,* 255 S. C. 517, 180 S. E. (2d) 206.

Upon this case being remanded to the Circuit Court, the respondents served an amended complaint deleting all allegations of negligence and seeking actual and punitive damages on a cause of action for fraud and deceit. The respondents alleged in the amended complaint that their loss and damage was due to and caused by the appellant failing to disclose, and maintaining a deceitful silence concerning the gulley and its filling.

The appellant, by answer, admitted the sale of the lots in question to A. Elliott Lawson and that on a portion of the lots there was a gulley partially filled with earth and debris. It was further alleged that A. Elliott Lawson, at the time he purchased the lots, and his contractor, at the time of the construction of the residence, knew of the gulley and fill and its location on the lots. It was further alleged that the appellant disclosed to A. Elliott Lawson the exist-

ence and location of the gulley on the lots, made no representation thereabout, and that respondents damages, if any, resulted from their negligence and that of their contractor.

This case came on for trial before the Honorable Clarence E. Singletary, Presiding judge, and a jury, in the Court of Common Pleas for Spartanburg County and resulted in a verdict for the respondents for actual damages. During the course of the trial the appellant made motions for a nonsuit and directed verdict. After the rendition of the verdict, the appellant made a motion for judgment *non obstante veredicto* and in the alternative for a new trial. These motions were refused and this appeal followed.

The appellant, by appropriate exceptions, questions the sufficiency of the evidence to support the verdict of the jury in favor of the respondents based upon the cause of action for fraud and deceit. It alleges therefor that the trial judge was in error in refusing its motions for a nonsuit, directed verdict and judgment *non obstante veredicto.*

It is a well established rule of law in passing upon the exceptions of the appellant to the refusal of the trial judge to grant their motions for a directed verdict and judgment *non obstante veredicto,* it is incumbent upon this Court to view the evidence and inferences fairly deducible therefrom in the light most favorable to the respondent. If more than one reasonable inference can be drawn from the evidence the case must be submitted to the jury. However, if the evidence is susceptible of only one reasonable inference the question is no longer for the jury but one of law for the court. *Carter v. Beals,* 248 S. C. 526, 151 S. E. (2d) 671. We review the evidence in this case in the light of the foregoing rule.

In the case of *Holly Hill Lumber Co. v. McCoy,* 201 S. C. 427, 23 S. E. (2d) 372, we held that where either party to a transaction conceals some material fact within his own knowledge, which it is his duty to disclose, he is guilty of actual fraud. Nondisclosure becomes

fraudulent concealment only when it is the duty of the party having knowledge of the facts to make them known to the other party to the transaction.

When this case was previously before us we recognized the rule set forth in 37 Am. Jur. (2d), Fraud and Deceit, Section 158, the following:

". . . when there exists in the property which is the subject of a sale latent defects or hidden conditions not discoverable on a reasonable examination of the property, the seller, if he has knowledge thereof, is bound to disclose such latent defects or conditions to the buyer, and his failure to do so may be made the basis of a charge of fraud."

At the request of the appellant, the subdivision of "Vanderbilt Hills" was laid out by Gooch and Taylor, Surveyors, and a plat thereof was made, dated October 16, 1958. The lots in question faced on Dover Road. On the plat there is the outline of a gulley on the lots in question. The surveyor testified that this was "quite an extensive gulley" and an outline thereof was placed on the plat "as notice that this was, in our opinion, not really a good place to build a house." Even though there was no testimony as to how wide the gulley was prior to being filled, an examination of the plat shows that it was approximately 50 feet wide, and the middle of the gulley was approximately 40 feet from the road.

A. Elliott Lawson testified that prior to the purchase of the lots he made an inspection thereof and observed a ditch or gulley across both lots and such was approximately five feet deep and ten to twelve feet wide and was located eight to ten feet from Dover Road, the front line of the lots. Lawson testified that he and his neighbor filled up this ditch or gulley with red clay. Lawson testified that he was present when the foundation for the residence was being dug and all that he saw was red clay. He said he did not see any debris. He further testified that he saw the ditch or gulley above described and understood that this was the one re-

ferred to on the plat. He also testified that in building the house it was set back beyond the normal building line in order to get away from the gulley or ditch he saw.

A neighbor who had been familiar with these lots since 1961 testified that from observation the lots purchased by Lawson were normal except for the gulley or ditch in front, to which reference has hereinabove been made. He further stated that during the period from 1961 he never noticed any trucks dumping in the area or any filling of any type being placed upon the lots in question. He said he was present when the lot was being prepared for the purpose of placing the Lawson house thereon and when the foundation therefor was being dug, red clay was the only dirt that was brought out. This witness testified that the ditch or gulley at the front of the lots was eight or ten feet wide and perhaps eight or ten feet deep. On cross examination he was asked if at a deposition hearing he had not testified that the ditch or gulley was twenty to thirty feet wide. His answer was that he didn't remember exactly how wide the ditch was but he didn't think it was thirty feet wide.

C. G. Smith, who had been in the construction business for a number of years, was called to the Lawson home in March of 1967 and upon examination of the residence he found that the front of the house was falling out and sinking down. He said that in an effort to remedy or repair the situation that he dug down below the original footing or foundation and could not find any solid ground. He said he did what he thought best in an effort to make the necessary repairs.

Several witnesses testified that they knew of the existence of a big gulley about the center of the lots in question and that such had been filled with trees, stumps and dirt. These witnesses also testified that the respondents, either one or both, were told of this fact. The respondents specifically denied that they were ever told by these witnesses or that they knew the lots had been filled in as testified to

by these witneseses. The respondents' testimony was that they discovered that their house had been built over filled in land only when it began to sink and settle and an attempt to repair such was being made. This conflicting testimony raised an issue of fact for determination by the jury.

The supervisor, who had charge of the construction of the house in question, testified that they dug down some three, four or five feet in order to put in the foundation and that he thought they had a pretty good foundation. This was after the location of the house had been moved back some five or six feet in order to get away from the gulley or ditch that A. Elliott Lawson saw.

The foreman in charge of a second effort to repair the house testified that they dug down beneath the foundation of the front wall of the house and the foundation appeared to be good because it was on red clay. He further testified that there was approximately two feet of clay below the foundation before he hit any debris and it was at this point that he found stumps and some logs eight to ten feet long. He stated that it was apparent that these stumps and logs had been dumped into the gulley and "there was just enough clay over the top to cover this other stuff that was beneath." He further testified that he dug down approximately twenty-two feet and what he found was stumps, logs, blue clay and debris. We quote from this witness's testimony the following:

"Q. Mr. Smith, you started to tell Mr. Smith earlier that in the developing of a subdivision that there are sometimes areas that the developer uses for a dumping ground, would you or would you not call this a dumping ground?

"A. It appeared that this is what happened because what we were digging out of the ground was the type things where you are clearing ground, pushing up stumps and trees and sawing off into lengths that could be transported away. This was what we were finding.

"Q. And on top of that was red clay?
"A. That's right."

It is a practically universal rule that under circumstances which make it the duty of the seller to apprise the buyer of the defects in the subject matter of the sale known to the seller but not to the buyer, *suppressio veri* is as much fraud as *suggestio falsi*. *Brooks Equipment & Mfg. Co. v. Taylor*, 230 N. C. 680, 55 S. E. (2d) 311. Where material facts are accessible to the vendor only, and he knows them not to be within the reach of the diligent attention, observation and judgment of the purchaser, the vendor is bound to disclose such facts and make them known to the purchaser. *Brooks v. Ervin Construction Co.*, 253 N. C. 214, 116 S. E. (2d) 454. Attention is directed to an annotation in 80 A. L. R. (2d) at page 1453, where there is a discussion of the liability of a vendor of a residence for failure to disclose that it was built on filled ground.

Applying the foregoing rules to the facts of this case, respondents' evidence, accepting it as being true and considering it in the light most favorable to them, as we are required to do in passing on a motion for a nonsuit, directed verdict or judgment *non obstante veredicto,* it tends to show that the appellant sold to the respondents the lots in question on which it had filled a gulley with trees and stumps and then covered it over with clay, without disclosing such facts to the respondents, they being ignorant and unaware of such, and upon which they constructed a house over the covered up debris, which filled in gulley materially affected the value of the house and lot. Since this defect was not apparent to the respondents and not within the reach of their diligent attention and observation, the appellant was under a duty to disclose this information to them. The respondent's evidence makes out a case of actionable fraud sufficient to carry the case to the jury. It follows that there was no error on the part of the trial judge in refusing the motions of the appellant for a nonsuit, directed verdict and judgment *non obstante veredicto.*

The appellant asserts that it was entitled to a directed verdict under the doctrine of *caveat emptor*. The short answer to this question is that the doctrine of *caveat emptor* does not apply in cases of fraud. *Rutledge v. Dodenhoff,* 254 S. C. 407, 175 S. E. (2d) 792.

The appellant charges the trial judge with error in refusing the motion for a new trial on the basis of an error in his charge which he failed to correct. In his instructions to the jury, the trial judge charged as follows:

"It is a suit based on fraudulent concealment of a material fact and whether or not the defendant should have filled the gulley with more suitable material or in a better way cannot be the basis for a verdict against the defendant. Whether the defendant should not have filled the gulley at all may not be a basis for a verdict for the *defendant* (emphasis added). You can only find a verdict against the defendant based on fraud and deceit in concealing the fact that the gulley was on the lots or concealing the extent and nature of the fill and the unstable condition of the land. To find the defendant guilty of fraud you must find the elements of the cause of action which I have already explained to you."

The appellant contends that the trial judge should have instructed the jury as follows: "Whether the defendant should not have filled the gulley at all may not be a basis for a verdict for the plaintiff."

We have considered the charge of the trial judge as a whole and we think that the instruction to which the exception was taken, even if erroneous, was harmless. This is particularly true in view of what immediately followed the instruction to which the exception was taken. It is our conclusion that the instruction given to the jury, even if erroneous, was not injurious or prejudicial to the appellant. *Ellison v. Simmons,* 238 S. C. 364, 120 S. E. (2d) 209.

The exceptions of the appellant are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.